UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:11-CV-00084-R

**METROPOLITAN LIFE INSURANCE CO.**                                    **PLAINTIFF**

v.

**TOI VANLUE, in her capacity as Conservator**
**for C.M.J., a Minor**                                                **DEFENDANT**

**OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (DN 3). The facts, as gleaned from Plaintiff's motion, are as follows. Plaintiff Metropolitan Life Insurance Company ("MetLife") provides life insurance coverage to employees at Lowe's Companies, Inc. ("Lowes"). It offers two policies: the Basic Term Life Insurance Plan ("Basic Plan") and the Supplemental Term Life Insurance Plan ("Supplemental Plan") (collectively "Plans"). Both of the Plans are covered under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). Like most insurance policies, the Plans contain a number of exclusions. Both Plans have the following exclusion for suicide:

> The [Plans do] not cover any losses where death is caused by, contributed to by, or results from: [1] suicide occurring within 24 months after your initial effective date of insurance; or [2] suicide occurring within 24 months after the date of any increases or additional insurance becomes effective.

DN 1-2; DN 1-3 (formatting altered).

Mark Edward Jenkins was an employee of Lowes, with cumulative benefits under the Plans exceeding $180,000.00. He had enrolled in the Basic Plan on January 12, 2008, and the

1

Supplemental Plan on December 2, 2009. Jenkins ended his life on June 16, 2010. On June 30, 2010, Defendant Toi L. Vanlue submitted a life insurance claim form to MetLife. DN 1-4. Vanlue was eventually appointed conservator for C.M.J., the minor beneficiary for Jenkin's policies, DN 1-5, and she relayed a second life insurance claim form to MetLife seeking payment on the policies. On February 18, 2011, MetLife deposited the proceeds from the Basic Plan, $36,363.95, into an account bearing C.M.J.'s name.

MetLife now claims that C.M.J. is not entitled to these funds, as they are subject to the suicide exclusion. It has sent Vanlue at least one correspondence to that effect and requested that she return the sum in its entirety. DN 1-7. To date, MetLife alleges that Vanlue has refused to comply with its demands. It now brings the instant action.

As relief from what MetLife has termed a breach of the agreement, it requests that the Court enter a temporary restraining order and permanent injunction, restraining and enjoining the Defendant from dissipating the proceeds of the Basic Plan or withdrawing any of these funds from the aforementioned account. It also asks for a declaration that the suicide exclusion precludes any payment under the Plans.

**I. Temporary Restraining Order**

MetLife brings this action under 29 U.S.C. § 1132(a)(3)(A) and (B). This section of ERISA provides the following relief:

> A civil action may be brought by a participant, beneficiary, or fiduciary to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or to obtain other appropriate equitable relief to redress such violations or to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3)(A)-(B) (formatting altered). Both temporary restraining orders ("TRO") and preliminary injunctions are the types of equitable relief that may be pursued under section 1132(a)(3). *Ramsey v. Formica Corp.*, 398 F.3d 412, 425 (6th Cir. 2005).

Pointing to the express provisions of this statute that permit equitable relief under ERISA, MetLife avers that "[b]ecause the right to an injunction is expressly provided [in this provision], MetLife is not required to establish the traditional elements necessary for obtaining injunctive relief." DN 3-1 at 5. In support of this proposition, MetLife cites to a number of circuit court decisions. These comparisons to the instant matter are misguided. First, these cases all rely upon non-ERISA sections of the federal code. *See United States v. Gleason*, 432 F.3d 678, 682 (6th Cir. 2005) (interpreting section 7408 of the tax code); *Atchison, T. & S. F. Ry. Co. v. Lennen*, 640 F.2d 255, 259 (10th Cir. 1981) (interpreting portions of the Interstate Commerce Act, specifically provisions that implicate railroad commerce). Second, with *Gleason*, the Sixth Circuit confronted a provision in the tax code that affords the Government an equitable remedy when it seeks to enforce IRS regulations surrounding tax shelters. *See* 26 U.S.C. § 7408. It strains the bounds of logic to even contemplate how section 7408 would impact the pertinent statutes under ERISA.

Moreover, a cursory examination of the relevant precedent in this and other circuits shows that when equitable relief is requested under section 1132, courts uniformly apply the four factors generally associated with temporary restraining orders and injunctions. *See e.g.*, *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408-09 (6th Cir. 2010); *Orrand v. Keim Concrete Pumping, Inc.*, No. 2:08-CV-1046, 2010 WL 3447647, at *16-17 (S.D. Ohio Aug. 30, 2010); *Crawford v. Trustees of Plumbers and Steamfitters*, No. 1:07-CV-228, 2007 WL 2905613, at *2 (E.D. Tenn.

Oct. 2, 2007); *Brown v. Associates' Health and Welfare Trust*, No. 2:07-CV-02006, 2007 WL 2325946, at *1-2 (W.D. Ark. July 23, 2007); *CBG Biotech, Ltd. v. United Healthcare Ins. Co. of Ohio*, No. 1:07-CV-00246, 2007 WL 642070, at *2 (N.D. Ohio Feb. 27, 2007). The Court has not encountered any binding precedent that would counsel it to travel MetLife's proposed course.

In rejecting MetLife's above-stated argument, the Court will instead consider the oft quoted factors in deciding whether to issue a temporary restraining order:

> (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay.

*Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) (quoting *Northeast Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1005-06 (6th Cir. 2006)). At first blush, the case would appear to turn on the second factor: whether MetLife would suffer "irreparable harm" without action. The Supreme Court has explicitly defined what qualifies as an irreparable injury:

> The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Sampson v. Murray*, 415 U.S. 61, 90 (1974). The Sixth Circuit offers further guidance on measuring irreparable harm when a sum of money is involved: "a plaintiff's harm is not irreparable if it is fully compensable by money damages." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992) (citing *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984)).

The language from *Basicomputer Corp.* and *Sampson* effectively shuts the door on this request for a TRO. The only harm that MetLife is seeking to avert is a potential monetary loss. Since, recovery of that amount, and nothing more, would return MetLife to the status quo, a TRO is unwarranted. That the sum of MetLife's potential damages is precisely known further counsels this Court to deny this equitable remedy; the Sixth Circuit has held that only when "an injury is not fully compensable by money damages [or] if the nature of the plaintiff's loss would make damages difficult to calculate" should a court classify the harm as irreparable. *Id*.

In addition, other courts have held that for irreparable harm, "the injury complained of must be of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Lucero v. Detroit Public Schools*, 160 F. Supp. 2d 767, 801 (E.D. Mich. 2001) (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)); *see Regan v. Vinick & Young*, 862 F.2d 896, 902 (1st Cir. 1988) ("Speculation or unsubstantiated fears about what may happen in the future cannot provide the basis for a preliminary injunction."). The issues cited by MetLife's in this motion are in fact the sum of two yet-unrealized fears: that the funds from the Basic Plan will be spent before a hearing can be held and that Vanlue or C.M.J. will not have sufficient assets to satisfy a favorable judgment. DN 3-1 at 8-10. While these concerns are not entirely unfounded, there are only justified if these two *future* events come to pass. Thus, the Court is able to characterize the proposed harm as both conjecture and speculative, not certain and imminent.

For these reasons, such a drastic remedy is inappropriate and it is unnecessary to further consider MetLife's request for a temporary restraining order.

**II. Preliminary Injunction**

Notwithstanding the above-stated analysis, the Court will grant MetLife the opportunity to be heard on whether a preliminary injunction in this matter is proper. To address this request, the Court sets out the following schedule below.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED:

(1) Plaintiff's Motion for a Temporary Restraining Order is DENIED. The request for a Preliminary Injunction continues.

(2) A telephonic conference will be held on **June 13, 2011 at 12:00 p.m. C.S.T.** The Court shall initiate the call.

(3) An in-person hearing will be held on **June 27, 2011 at 12:00 p.m. C.S.T. in Paducah, Kentucky.** There the Court will examine Plaintiff's Motion for a Preliminary Injunction.

(4) The clerk of court is directed to send a copy of this opinion and order to Defendant by certified mail.

Cc: Counsel

Toi L. Vanlue
1005 Glenwood Mill Road
Cadiz, KY 42211